No. 753.—E. HOLLINGSHEAD *v.* L. STURGIS, Executor, and another.

The act by which a testamentary disposition is revoked must be made in one of the forms prescribed for testaments and clothed with the same formalities.

A noncupative will by private act, not having been read by the testatrix to the witnesses, nor by one of them to the rest, in her presence, is invalid as a testament, and will not operate as a revocation of a valid will.

A letter written by the testator, posterior to the date of the last will, not clothed with the formalities required for a testament, will not operate a revocation of the last will and testament of the deceased.

APPEAL from the Fifth District Court, parish of East Feliciana. *Posey,* J. *W. F. Kernan,* for plaintiff and appellant. *Cross, Hardee & Muse* and *E. T. Merrick,* for defendant and appellee.

WYLY, J. Mary Kelper, wife of the defendant, Louis Sturgis, died without issue, leaving considerable property in the parish of East Feliciana, and leaving her olographic will made in 1851, which was duly admitted to probate and ordered to be executed.

In this will, after making certain special legacies, she devised the mass of her estate to John R. Sturgis, the son of her husband by a former marriage, reserving, however, to the latter the usufruct, use

and habitation thereof during his life time and making him executor of the will.

The plaintiff, E. Hollingshead, the mother and forced heir of the deceased, claims her property on the ground that the olographic will has been revoked by a posterior will, in nuncupative form, under private act, made in 1859, and also by a letter of the testatrix to her mother after the confection of the second will, informing her of the change in her testamentary disposition and that John R. Sturgis, her universal legatee in the olographic will, should not have one cent of her property.

The nuncupative will by private act was contested by Sturgis and adjudged to be null and void on the ground that the necessary formalities for a valid testament had not been complied with, the same having been written out of the presence of the witnesses and not read to them by the testatrix, nor read by one of the witnesses to the rest, in the presence of the testatrix, as required by article 1575 of the Civil Code.

Plaintiff seeks to have the olographic will annulled and to receive the property as sole surviving forced heir of her deceased daughter on the ground that the letter which was dated written and signed by the deceased, and the posterior will, in nuncupative form, by private act, although invalid as testaments, are sufficiently formal, as revocatory acts, to set aside the olographic will. She demands, however, that if the olographic will be not annulled, that the legacies thereof be reduced to the disposable portion, and that she have judgment against the executor for the amount due her as forced heir.

This demand is denied by the defendants who declare that the nuncupative will under private act being declared illegal and invalid for want of proper formalities, cannot revoke a valid will, and also that the letter of the twenty-ninth of September, 1859, cannot revoke the last will and testament of the deceased.

The court below rejected the prayer for the revocation of the olographic will, decreeing that the legacies thereof be reduced to the disposable portion and that plaintiff have judgment only for the amount due her as forced heir.

Plaintiff has appealed.

It is not pretended that the letter and nuncupative will are valid as testaments, but it is urged that they are acts clothed with sufficient formalities to revoke the olographic will under which the defendant, John R. Sturgis, claims the property of the deceased as universal legatee.

What are the formalities of acts of revocation? Article 1685 of the Civil Code declares that "The act by which a testamentary disposition is revoked must be made in one of the forms prescribed for testaments, and *clothed with the same formalities*."

The nuncupative will by private act was not clothed with the neces-

sary formalities prescribed by article 1575, not having been read by the testatrix to the witnesses, nor by one of them to the rest in her presence.

It was a nullity under article 1588, which declares that the formalities to which testaments are subject "must be observed," otherwise they are null and void.

If the nuncupative will upon which plaintiff relies in this suit to establish the revocation be invalid, as a will, for want of proper formalities, as has been decreed, it cannot be valid as a revocatory act, because the law prescribes for the latter the same formalities. C. C. 1685. The revocation of testaments mentioned in article 1684 of the Civil Code is explained by articles 1685, 1686, 1687, 1688 and 1689, from all of which we collect that there are two modes of revoking a valid testament, the one by a written· instrument intended as a testament or last will, and the other by an act intended to take effect in the life time of the testator which is contrary to the disposition of the testament, such as a donation *inter vivos* or a sale of the property bequeathed.

If the testator elects the former he must pursue the rule laid down by article 1685 and clothe the instrument intended to take effect in the future with all the formalities of a solemn act. If, however, he desires the revocation to be effective in his life time he must conform to the mode indicated by articles 1688 and 1689.

The pretended nuncupative will does not conform to either of the modes indicated by law, and therefore produces no revocation whatever.

The decision in Fuselier *v.* Masse et al., 4 L. 427, upon which the plaintiff relies to sustain her position, that an instrument invalid as a will, on account of its informalities, may be valid as an act of revocation, was rendered upon an instrument executed in 1799, long prior to the enactment of the Civil Code; and we cannot regard that decision as a judicial interpretation of any of the articles of our Code to which we have adverted.

The letter written by the testatrix to the plaintiff on twenty-ninth September, 1859, was not a testamentary disposition. It was not a solemn act, although written dated and signed by her. It evidently was not intended as such. It contained no institution of heir, no dispositions *causa mortis*, nor any expressions indicating a last will. C. C. 1564.

It was merely an ordinary letter to her mother in which she expressed dissatisfaction with her universal legatee, saying, " I told John if he went back to his wife I would not give him one cent of my property. I have changed my will and he shant have one cent of it. I am satisfied with him," etc.

This letter does not furnish evidence of that formal and solemn character necessary to establish the revocation of a will. C. C. 1564, 1563, 1453, 1455 and 1685.

It is therefore ordered that the judgment appealed from be affirmed with costs.