SUSAN H. ALDRICH, executrix, *vs.* HENRY A. ALDRICH.

Suffolk. January 23, 1913. — June 2, 1913.

Present: RUGG, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Will*, Validity, Revocation. *Undue Influence. Evidence*, Of undue influence, Remoteness, Admissions by conduct: failure to testify, Of state of mind, Presumptions and burden of proof. *Witness.*

At the trial, on appeal from a decree of the Probate Court allowing a will, of an issue, whether the will was procured by undue influence, it appeared that the appellee was the testator's wife by a second marriage, that the appellant was one of several children of the testator, all by his first marriage, that by the will the widow was given seven twelfths of the estate, a daughter of the testator five twelfths, and each of the rest of the children and of several grandchildren $5. The testator's first wife had died about a year before his second marriage, which was twelve years before the will was made. The testator died about five years after the will was made. The appellant offered evidence tending to show that his mother had stated to him in the presence of the testator and the appellee that she had caught them in illicit relations, and that the appellant thereupon ordered the appellee from the house. The evidence was excluded, subject to an exception by the appellant. The bill of exceptions did not set out all of the evidence, but stated that there was evidence tending to show the exercise of undue influence by the appellee over the testator and an especial hostility on her part toward the appellant beginning previous to the date of her marriage to the testator and continuing to the date of the testator's death. *Held*, that, while the evidence might have been admissible to show the state of the testator's mind if some foundation had been laid for it, it did not appear that such a foundation had been laid because there was no evidence of efforts by the appellee to induce the testator to disinherit the appellant and to make a will in her favor; and that the time to which the evidence related was so remote that its exclusion as a matter of discretion could not be deemed improper.

At the trial, on an appeal from a decree of the Probate Court allowing a will, of an issue, whether the will was procured by undue influence of the testator's widow, who was named as executrix, the widow, although a beneficiary under the will, is not an adverse party, and her failure to testify in support of the will is not evidence from which an inference can be drawn that, if she had testified, her testimony would have tended to prove the will invalid.

The mere fact of the disappearance of several instruments of a testamentary nature, which were executed by a testator after the making of a will which was offered for probate, in the absence of any contention that they had been taken from the testator's possession or were among his papers at his death, raises a presumption of fact that the testator destroyed them with an intention to revoke them.

At the trial of an issue, whether an instrument offered for probate as a will had been

revoked, there was evidence that, during five years that intervened between the date of the instrument and the testator's death, the testator had executed several instruments of a testamentary nature, but whether or not they were wills or codicils, or what was their character, was left uncertain. None of them could be found. One of a firm of attorneys who had acted for the testator in drawing the various instruments testified, subject to an exception by a contestant of the will, that at the testator's request he went to him within three months before his death with the instrument offered for probate and stated to him that his, the attorney's, partner was under the impression that there was another will, that the testator, after a very careful examination of the will, stated, "No, this is the one, this is the one I want," and then laid the will down on the bed at his side, where the witness left it. *Held*, that the evidence was admissible as tending to show an intention of the testator to destroy the wills that could not be found and to revive, or to select, the will offered for probate.

APPEAL by Henry A. Aldrich from a decree of the Probate Court allowing the will of Charles T. Aldrich, late of Winthrop.

The will was dated June 17, 1902. By its provisions seven twelfths of the estate were given to the testator's widow, Susan H. Aldrich, five twelfths to Alice M. Aldrich, his daughter by a former marriage, and $5 to each of three sons by the former marriage, Henry A., Charles and Louis, and to an adopted daughter and to each of his grandchildren. The widow was appointed executrix.

The following issues were framed for the jury:

"1. Was the will purported to be executed by Charles T. Aldrich made through the fraud or undue influence of Susan H. Aldrich?

"2. Was the instrument now offered for probate revoked or cancelled by the testator?"

· The issues were tried before *Rugg*, C. J. It appeared that the testator had married Susan H. Freeman in November, 1890, about a year after the death of his first wife, and that there were no children by the second marriage. · The testator died on April 6, 1907.

The bill of exceptions states that there was evidence introduced by the appellant, which was controverted by the appellee, tending to show the exercise of undue influence by Susan H. Aldrich over the testator, and tending to show an especial hostility on her part against the appellant, beginning previous to the date of her marriage to the testator and continuing up to the date of the execution of the will of June 17, 1902, and from that time down to the date of the death of the testator.

The appellant further offered to prove, for the purpose of showing that such hostility was not caused by any wrongful or improper conduct on his part, that, previous to the marriage of his father and the appellee and during the lifetime of his mother, there had been illicit relations between the testator and the appellee, and that upon one occasion he had gone home and found his father and mother and the appellee in the front hall; that his mother was crying, and that, upon his asking her what was the matter, she "stated that she had just caught his father and Sue Freeman having connections; that neither of them had denied it, and that he then ordered said Susan H. Freeman out of the house, and further ordered her to keep away in the future." The evidence was excluded and the appellant excepted.

Upon the second issue, Peter J. McLaughlin, one of the witnesses to the instrument offered for probate, testified, upon cross-examination, that upon several occasions subsequent to the date of the will here in question he had been called in to witness other wills of the testator; that he was unable to fix the date of the execution of any of such subsequent wills with the exception of the last one, which was in the late spring or early summer of 1906; that he was able to fix this date by reason of the fact that the testator had a good deal to say about the San Francisco earthquake, he having been in California at the time and having just returned from there. In redirect examination he testified that he was not sure that all the instruments witnessed by him were wills; that some of them might possibly have been codicils, though he did not think so.

There was no codicil to the will of June 17, 1902.

John A. Thayer, Esquire, who drew and was a witness to the will offered for probate, testified that he had drawn other wills for the testator than the one of June 17, 1902, but that he was unable to remember when these other wills had been drawn: that some of them might have been drawn subsequent to June 17, 1902. He further testified that in February, 1907, at the request of the testator, he had gone to the testator's safe deposit box in the Worcester Safe Deposit Company to get his will and that he found there only the will of June 17, 1902, in an unsealed envelope and that he delivered the will to Mr. Perry, his partner, to take to the testator.

Mr. Perry was allowed, against the objection of the appellant, to testify as to an alleged declaration of the testator at the time he took the will of June 17, 1902, to the testator in February, 1907, in substance as follows: "I stated to Mr. Aldrich that I understood that the will had been sent for, and I had the will, and . . . said . . ., 'Mr. Thayer is under the impression that there is another or later will.' And Mr. Aldrich took the will and read it, . . . consuming considerable time in reading it, . . . opening the sheets . . . and my impression is he was at least as long about it to have read it twice, and he said, 'No, this is the one, this is the one I want,' and then laid the will down on the bed by his side. Then we talked about general matters." Mr. Perry further testified that he left this will with the testator.

The appellant asked that the jury be instructed as follows:

1. "In weighing the evidence upon the issue of undue influence, it is proper for you to consider the fact that Susan H. Aldrich, the person charged with the exercise of such undue influence, has not taken the stand to deny that she exercised such undue influence nor to deny the existence of a long standing hostility on her part against this respondent as testified to by said respondent, whose testimony stands uncontradicted."

2. "Under the statute of this Commonwealth no will shall be revoked except by burning, tearing, cancelling, or obliterating it with the intention of revoking it by the testator himself or by a person in his presence and by his direction; or by some other writing signed, attested, and subscribed in the same manner as a will; or by subsequent changes in the conditions and circumstances of the testator from which a revocation is implied by law."

3. "There is evidence in this case which is undisputed that a will later in date than the will here offered for probate was executed by the testator, and there is no evidence of any revocation of said later will in any of the methods prescribed by the statute governing the revocation of wills; and if you find that such a later will was executed, then your answer to the second issue here presented must be in the affirmative."

The requests were denied.

The jury answered the issues in the negative. The appellant alleged exceptions.

*W. J. Brown*, for the appellant.

*M. M. Taylor*, (*C. B. Perry* with him,) for the appellee.

BRALEY, J. The testator, while he did not overlook his son, gave the appellant only a nominal pecuniary legacy. It was contended at the trial, that the will was procured through the undue influence of the executrix, the testator's wife by a second marriage, and he offered evidence, which was excluded, that in his presence some twelve years previous to the execution of the will, upon being charged by his mother, the first wife of the testator, with illicit relations, neither of the implicated parties denied their guilt. The will undoubtedly is largely beneficial to the widow, and if the jury believed this evidence a feeling of hostility on her part may have been engendered which if opportunity offered might have induced her to persuade the testator to discriminate unjustly against his son. A wife, however, lawfully may urge her husband to make a will in her favor, and the exceptions do not purport to recite all the evidence. It often happens that no direct proof of undue influence can be produced. It must be established by proof of circumstances. The evidence offered might have been admissible as tending to show the testator's mental status if some foundation had been laid. *Shailer* v. *Bumstead*, 99 Mass. 112, 121. But if subsequent expressions of hostility were introduced which continued to the date of the will, and the testator's death, no evidence appears of efforts on her part to induce him substantially to disinherit the appellant, and to make a will in her favor. The undisputed facts only showed the contents of the will, and that the executrix and principal legatee was the second wife of the testator, who married her in about a year after the death of his first wife and mother of his children. But of themselves these facts did not prove undue influence. *Maynard* v. *Tyler*, 168 Mass. 107, 114. The circumstances of each case are so varied that a rigid or uniform rule cannot be laid down, and how far evidence of this description should be admitted must be left very largely to the discretion of the presiding justice who has all the evidence before him. The period in the present case seems to have been so remote that the exclusion of the testimony cannot be deemed improper or unfounded. *Jenkins* v. *Weston*, 200 Mass. 488. *Howes* v. *Colburn*, 165 Mass. 385.

The person alleged to have exercised undue influence, even if

a beneficiary, is not an adverse party, and such person may be called as a witness either by the executor or contestant, and the failure of the proponent although present during the trial, to give evidence in support of the will which she was required to offer for probate, or to deny the accusations of the appellant, did not convert her silence into an inference of fact to be drawn by the jury, that if she had testified her testimony would have been prejudicial to its validity. *Shailer* v. *Bumstead,* 99 Mass. 112, 127. *McConnell* v. *Wildes,* 153 Mass. 487. *Old Colony Trust Co.* v. *Wallace,* 212 Mass. 335. The instructions requested on this point were properly refused, and those given were unexceptionable so far as they went, although they well might have gone farther. *Jones* v. *Boston & Northern Street Railway,* 211 Mass. 552, 555.

It is declared by the testator in the beginning of the instrument, that it is his "last will and testament." But this is not conclusive, and the second issue presented the question whether it had not been revoked or cancelled by the testator. A will under the R. L. c. 135, § 8, cannot "be revoked except by burning, tearing, cancelling or obliterating it with the intention of revoking it by the testator himself or by a person in his presence and by his direction; or by some other writing signed, attested and subscribed in the same manner as a will; or by subsequent changes in the condition or circumstances of the testator from which a revocation is implied by law." It is only the clause, "signed, attested and subscribed in the same manner as a will," upon which the appellant relies. If revocation were shown, he was not required to prove the provisions of a later will which could not be offered for probate. *Wallis* v. *Wallis,* 114 Mass. 510. See *Tarbell* v. *Forbes,* 177 Mass. 238, 243; *Williams* v. *Williams,* 142 Mass. 515. It does not seem to have been disputed that subsequent wills were prepared under his direction and duly executed, although one of the witnesses who attested the instruments testified that some of them possibly might have been codicils, but from his recollection he thought they were wills. The making of a new will, if on its face it purports to be the testator's last will, operates to revoke all former wills without words of express revocation, and the intention to revoke and the act of revocation being coincident the statute is satisfied. *Laughton* v. *Atkins,* 1 Pick. 535. *Brown* v. *Thorndike,* 15 Pick. 388. It is not contended that any specific

provision or clause had been revoked by later wills, but that the entire will had been nullified.

While the evidence appears to have been slight, the jury were properly instructed that they could find some of the subsequent instruments described by the witnesses might have been codicils, and if they so found, what effect, if any, codicils, the contents of which were not shown, should have, either as a modification or revocation of the original will, was left to their determination. The mere intention to revoke and nothing more, as we have said, does not of itself constitute a revocation. But as the later wills were not produced, and neither party claimed that the wills ever had been taken from the testator's possession or were in existence among his papers at his death, their disappearance raised a presumption of fact for the consideration of the jury, that with the intention to revoke he had destroyed them. *Davis* v. *Sigourney*, 8 Met. 487, 488. *Pickens* v. *Davis*, 134 Mass. 252, 257, 258. *Williams* v. *Williams*, 142 Mass. 515, 517. 40 Cyc. 1280, 1281, and cases cited.

The question whether, under these conditions, the declarations of the testator, to the admission of which the appellant excepted, were admissible is one where the cases are far from being uniform. The ground of exclusion is that the declarations are hearsay and nothing more. *In re Shelton*, 143 N. C. 218; 10 Am. & Eng. Ann. Cas. 531, note 535, 536, where many of the authorities are collected and compared. *Throckmorton* v. *Holt*, 180 U. S. 552, 586. But we are not prepared to qualify the carefully considered opinion of Mr. Justice Charles Allen, speaking for the court in *Pickens* v. *Davis*, 134 Mass. 252, which decides that such evidence is admissible to show the intention, state of mind, purpose or plan of the testator, and is in accordance with many well considered cases. *Spencer's appeal*, 77 Conn. 638. *Patterson* v. *Hickey*, 32 Ga. 156. *Burge* v. *Hamilton*, 72 Ga. 568, 625. *In re Page*, 118 Ill. 576. *McDonald* v. *McDonald*, 142 Ind. 55. *Collagan* v. *Burns*, 57 Maine, 449. *Lawyer* v. *Smith*, 8 Mich. 411. *Ewing* v. *McIntyre*, 141 Mich. 506, 517, 518. *Lane* v. *Hill*, 68 N. H. 275. *Collyer* v. *Collyer*, 110 N. Y. 481. *Behrens* v. *Behrens*, 47 Ohio St. 323. *Luis* v. *Muhrback*, 49 Ore. 452, 469, 470. *In re Steinke's Will*, 95 Wis. 121. *Boudinot* v. *Bradford*, 2 Dall. 266. *Fallon's estate*, 214 Penn. St. 584. *Colvin* v. *Fraser*, 2 Hagg. Eccl. 266.

*Reed* v. *Harris,* 7 Car. & P. 330. *Keen* v. *Keen,* L. R. 3 P. & D. 105. The statements of the testator, identifying the earlier will as the one he wanted and which he had requested his counsel to procure, were competent evidence for the consideration of the jury as indicative of his intention or plan to destroy the wills which could not be found, and to revive, or to select, the will propounded as his final will. *Davis* v. *Sigourney,* 8 Met. 487, 488. *Pickens* v. *Davis,* 134 Mass. 252, 257, 258. *Williams* v. *Williams,* 142 Mass. 515, 517. *Lane* v. *Moore,* 151 Mass. 87, 89, 90. Wigmore on Ev. §§ 112, 1737.

The requests upon the question of revocation were sufficiently covered by the instructions. The burden of proof rested on the appellant, and if the jury were left in doubt it had not been sustained. *Giles* v. *Giles,* 204 Mass. 383. It was proper to charge accordingly, and the instructions upon this portion of the case, and the presumptions as to the testator's intention which they might draw from all the evidence, do not appear for the reasons stated to be open to the objections now urged.

*Exceptions overruled.*